**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Remo Romulo Rainsford, | No. CV-17-00530-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Remo Romulo Rainsford brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises three issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by failing to include all of Plaintiff's mental limitations in the residual functional capacity ("RFC") assessment; 2) the ALJ failed to fully develop the record; and 3) the ALJ failed to provide clear and convincing reasons to discount Plaintiff's statements about his bipolar disorder. (Doc. 16).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 16, 17, & 18). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

. . .

. . .

## I. Procedural History

Plaintiff filed an application for Supplemental Security Income on July 15, 2013.[1] (Administrative Record ("AR") 86). Plaintiff alleged disability beginning on July 15, 2013[2] based on back problems, bipolar disorder, and mental illness. (AR 86, 99, 217). Plaintiff's application was denied upon initial review (AR 85) and on reconsideration (AR 98). A hearing was held on February 29, 2016 (AR 43), after which ALJ Charles Davis found, at Step Four, that Plaintiff was not disabled because he could perform his PRW as a dump truck driver. (AR 22). On August 28, 2017 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

## II. Factual History[3]

Plaintiff was born on January 13, 1968, making him 45 at the AOD of his disability. (AR 99). He has an 11th grade education and has past relevant work as a horse caretaker, ranch hand, landscape laborer, vet assistant, water truck driver, and in maintenance. (AR 83, 239).

### A. Treating Physicians

On August 7, 2012 Plaintiff was seen at COPE Community Services for a psychiatric diagnostic interview. (AR 281). He had poor insight, judgment, and concentration, and was angry and agitated. Plaintiff was possibly under the influence, was not directable, and was only able to express wanting help for his elbow and stated he only at COPE because he was court-ordered to be there.

On February 5, 2013 Plaintiff was seen for medication refills for Fluoxetine for depression and Quetiapine for mood instability. (AR 282). He was friendly with good eye contact, memory appropriate, thought processes logical and coherent, and had good concentration, judgment, and insight. Diagnoses were bipolar II disorder and cannabis abuse.

---

[1] Plaintiff filed prior applications on March 30, 2010, February 10, 2006, and October 28, 2004. (AR 87).

[2] Plaintiff's initial application listed an AOD of September 30, 2005, but this was changed to July 15, 2013 on reconsideration.

[3] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to Plaintiff's claims on appeal.

On March 5, 2013 Plaintiff was friendly with good eye contact, mood and concentration good, thought processes logical and coherent, and judgment fair due to illicit cannabis use. (AR 288). He was medication compliant and his bipolar disorder was stable or improved. (AR 289).

On April 25, 2013 Plaintiff was talkative with an even mood, thought processes were logical and coherent, concentration, insight, and judgment good, and memory appropriate. (AR 286). He was medication compliant and bipolar disorder stable or improved. (AR 287).

On June 3, 2013 Plaintiff asked for a seriously mentally ill ("SMI") designation to help him with a disorderly conduct charge. (AR 284). His memory was appropriate, judgment and concentration were good, insight fair, and thought processes tangential. Plaintiff was medication compliant and bipolar disorder was stable or improved. (AR 285).

On September 18, 2013 Plaintiff reported he stopped Seroquel because it made him twitch and that cannabis controlled his anxiety and mood instability. (AR 290). He was depressed because his hip hurt and frustrated. Plaintiff had good judgment, insight, and concentration, anxious mood, and logical and coherent thought processes. A review summary that same date notes that Plaintiff reported stopping his medications because they were causing twitches, dry mouth, and disturbed sleep. (AR 294).

At various other non-mental health appointments, Plaintiff was described as tangential, talkative, and animated (AR 390, 483, 486, 502, 508), alert and oriented x3 (AR 392, 420, 478, 481, 484, 505, 527, 532, 535), normal/appropriate affect (AR 420, 478, 519, 527, 535), pleasant and cooperative (AR 390, 478, 519), and anxious (AR 443, 484, 505, 510, 513). Plaintiff denied depression, bipolar disorder, and anxiety on multiple occasions (AR 397, 426, 530, 534) and reported using medical marijuana to relieve stress (AR 398, 426). At an ER visit for back pain, Plaintiff had pressured speech and tangential thought processes and the physician believed Plaintiff had a mental health issue with mania and was exhibiting drug seeking behavior. (AR 480–81). At an ER visit for eye redness, the physician noted Plaintiff had an obvious psychiatric disturbance and required a lot of

redirection. (AR 502). At an ER visit for elbow pain, Plaintiff was loud, yelling, inappropriate, and said he wanted to hit someone with a hammer. (AR 510). When security arrived, Plaintiff calmed down and said he wanted to go home.

B.    Examining Physicians

At a physical medicine consultation with Dr. Hassman on November 1, 2013, Plaintiff denied depression but reported anxiety. (AR 344). Plaintiff was described as awake and alert, oriented times three, pleasant and cooperative, and extremely verbose.

Plaintiff had cognitive testing with Dr. Plevell on February 23, 2016. (AR 358). Plaintiff was described as alert and oriented with elevated affect and rapid speech, and his thought processes were circumstantial, tangential, and loose in association. Dr. Plevell's conclusion was:

> The client's condition appeared to be most consistent with the diagnoses of: Bipolar Disorder; R/O Unspecified Neurocognitive Disorder. Testing suggested highly significant difficulty with processing speed and possibly with abstraction. Behaviorally, he demonstrated rapid speech and significantly disorganized thought. It is unclear if these issues are due to a primary condition or secondary to his Bipolar Disorder.

(AR 359).

C.    State Agency Physicians

On initial review, state agency physician Dr. JES found that Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (AR 90). Dr. JES noted that Plaintiff had a history of tangential thought processes and poor judgment that had gotten him into legal trouble, and was not compliant with his meds, which was a common problem with affective disorders and thus was regarded as a consequence of his mental impairment rather than a contributing factor. (AR 91). Dr. JES assessed the following limitations: marked limitation in ability to understand and remember detailed instructions, carry out detailed instructions, and interact with the general public; moderate limitation in ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, and be punctual,

complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace, accept instruction and respond appropriately to criticism from supervisors, and get along with coworkers and peers. (AR 93–94). Dr. JES opined that Plaintiff could perform simple tasks on a sustained basis, interact with peers and supervisors on a superficial, work basis, and could adapt to a work situation with simple tasks and no public contact. (AR 95). These findings were affirmed on reconsideration. (AR 103–104, 107–108).

D.    Plaintiff's Testimony

On a Disability Report dated July 19, 2013 Plaintiff stated that he stopped working in 2008 due to personal reasons. (AR 217). On a Function Report dated October 3, 2013 Plaintiff reported that he could not work because of pain and arthritis in his right elbow and pain in his right hip. (AR 231). He takes care of his pets, has no problems with personal care, prepares his own meals, and does chores like vacuuming, watering the plants, and taking out the trash. (AR 232–233). On the section about his abilities, Plaintiff did not note any mental-related impairments. (AR 236). For how long he can pay attention, he wrote "I so broke I can't afford to pay" but checked the box indicating he can finish what he starts. (AR 236). For how well he can follow written instructions, Plaintiff stated he had problems writing because of his elbow pain, and for how well he can follow spoken instructions, Plaintiff wrote "what does that have to do with my hip." (AR 236).

At the hearing before the ALJ, Plaintiff testified he lives with his 78-year-old mother and that he tries to help her with yard work, watering flowers, vacuuming, and cleaning. (AR 51). He stated that it was frustrating because he hadn't been able to get a full-time job but also that he had not applied for any; he used to do seasonal work on ranches because he traveled around playing polo but has not played since 2002. (AR 52). His back and elbow pain prevent him from working now. (AR 52, 53).

Plaintiff's current medications are Flucytosine for his nose and fish oil. (AR 53). At times he takes pain medication but mainly uses medical marijuana. (AR 55, 69). His mother gives him money when he helps with chores to purchase the marijuana. (AR 70). Plaintiff

was previously court-ordered to take Prozac and Seroquel. (AR 71–72). He did not take Prozac; the jail gave him Risperdal but it gave him headaches so it was changed to Seroquel, but that also gave him bad headaches and put him in a fog. (AR 72). Plaintiff reported that COPE staff told him to follow up with the doctors but that they were happy he was using marijuana right now. (AR 72).

On questioning by his attorney, Plaintiff stated that he had problems processing new information and staying focused. (AR 62). He had problems bouncing around and changing the subject ever since someone gave him LSD at 4 years old; he loses track and then comes back to things but gets overwhelmed, confused, and anxious. (AR 62). Plaintiff stated that he tries to get along with everyone, but then also admitted that he had called his counsel's office multiple times in a row upset and yelling because he gets agitated about things. (AR 63). He does not like being around a lot of people and had never gotten in a fight with anyone, but there were allegations. (AR 64). Plaintiff received a SMI designation through COPE in 2013 when he was ordered to attend treatment there after being arrested for disorderly conduct. (AR 60–61).

### E. Lay Testimony

Plaintiff's mother completed a Function Report–Third Party and stated that Plaintiff has problems walking, pain in his right elbow, and constant lower back pain. (AR 223). She did not report any mental impairments but did note Plaintiff has trouble completing tasks and does not finish what he starts, but can follow written and spoken instructions. (AR 228).

### F. Vocational Testimony

At the hearing before the ALJ, Connie Guillory testified as a vocational expert. The ALJ asked Guillory to assume an individual with Plaintiff's age, educational background, and work history, who could perform a range of medium work with the following mental limitations: work limited to simple, routine tasks with frequent interaction with supervisors and coworkers on a superficial basis and no interaction with the general public. (AR 76–77). Guillory testified such a person could do Plaintiff's past work as a dump truck driver.

(AR 77). If the RFC was reduced from medium to light work with the same mental limitations, Guillory stated such a person could also do other jobs including hand packer, folder, and machine operator. (AR 78). Guillory further stated that the jobs she listed were simple one and two step tasks, and that an employer would tolerate a person being off task approximately 10 percent of the time. (AR 79, 81).

G.     ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of degenerative disc disease and bipolar disorder. (AR 12). The ALJ also considered the Paragraph B criteria set out in the social security disability regulations for evaluating mental disorders. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *Id*. The ALJ found Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace,[4] and no episodes of decompensation of extended duration. (AR 14).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. (AR 16, 21).

The ALJ gave some weight to Dr. Plevell's assessment as it provided test results not found in the treatment records. (AR 19). The ALJ also noted that Dr. Plevell provided no opinion as to whether her findings suggested vocational limitations or the extent of limitations, if any.

The ALJ gave great weight to the state agency consultant opinions as being consistent with the evidence available at the hearing. (AR 21). The ALJ also noted that no greater limitations were suggested by the updated medical records received at hearing level.

---

[4] The ALJ specifically noted the following: Plaintiff reported anxiety and difficulty focusing; Plaintiff was noncompliant with medication; limited behavioral health records noted good concentration in late 2013; cognitive testing suggested highly significant difficulty with processing speed and possibly with abstraction; Plaintiff demonstrated rapid speech and significantly disorganized thought; there is evidence of pressured speech and tangential thought processes but no evidence of prior cognitive complaints or testing—for example, treatment note described Plaintiff as having good memory of the past, good intellectual capacity, average intelligence, and fair insight. (AR 14–15).

The ALJ found that Plaintiff had the RFC to perform a range of work, with work limited to simple, routine, tasks with frequent interaction with supervisors and coworkers on a superficial work basis and no interaction with the general public. (AR 16). The ALJ determined that Plaintiff could perform his PRW as a dump truck driver. (AR 22). Alternatively, the ALJ also found that Plaintiff could perform other work existing in the national economy. (AR 22–23) The ALJ therefore concluded that Plaintiff was not disabled. (AR 23).

## III. Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

Here, Plaintiff was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. Social Security Ruling (SSR) 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the ALJ's

findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at

1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Analysis

Plaintiff argues that the ALJ erred by failing to incorporate his moderate limitations in maintaining concentration, persistence, and pace when determining his RFC. Plaintiff also argues that the ALJ erred by failing to fully develop the record regarding Plaintiff's mental impairments, and that the ALJ failed to give clear and convincing reasons to discount Plaintiff's testimony regarding his bipolar disorder. Plaintiff requests that the Court reverse and remand this matter for further administrative proceedings.

The Commissioner argues that the ALJ's RFC assessment properly accounted for the medical opinions that Plaintiff had trouble maintaining pace and is supported by the state agency physician findings. The Commissioner further argues that the ALJ fulfilled his duty to develop the record by holding the record open for Plaintiff to submit additional evidence. Finally, the Commissioner states that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony and that the treatment record does not support Plaintiff's allegations regarding the severity of his physical and mental problems.

The Court finds that the ALJ's RFC assessment adequately captures all of the limitations that the ALJ found credible and supported by substantial evidence and is consistent with the medical testimony. The Court further finds that the ALJ did not err in failing to develop the record further. Finally, the Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony. Accordingly, the Court will affirm the Commissioner's decision.

. . .

A.  RFC

Plaintiff argues that the ALJ failed to include all of his limitations when considering his work capacity. Specifically, the ALJ found that Plaintiff had moderate limitations in concentration, persistence, and pace, but the only mental limitation in the RFC was a restriction to simple, routine tasks and no interaction with the general public. Plaintiff contends that the ALJ failed to explain how the RFC accounted for his moderate limitations in concentration, persistence, and pace, and that this error is harmful because it impacts his ability to sustain work.

RFC is "the most [a claimant] can still do despite her limitations," and includes assessment of the claimant's "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what she can do in a work setting." 20 C.F.R. § 404.1545(a)(1). The Commissioner retains the ultimate responsibility for assessing a claimant's RFC. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ was required to assess Plaintiff's RFC based on all the record evidence, including medical sources, examinations, and information provided by Plaintiff. 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). However, the ALJ need not include all possible limitations in the assessment of what a claimant can do, but rather is only required to ensure that the RFC "contain[s] all the limitations that the ALJ found credible and supported by the substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006); *see also Dschaak v. Colvin*, 2015 WL 181803, *3 (D. Or. Jan. 14, 2015) ("An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony.").

Here, the ALJ found that Plaintiff had the capacity to perform a range of work with a limitation to simple, routine, tasks, frequent interaction with supervisors and coworkers on a superficial work basis, and no interaction with the general public. (AR 16). Plaintiff contends that this assessment fails to account for his moderate limitations in concentration, persistence, and pace. Specifically, Plaintiff argues that the limitation to simple, repetitive

tasks only reflects his pace deficiency, but not his concentration and persistence deficiencies. The parties focus their arguments on this point on two cases, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), and *Perkins v. Colvin*, 45 F.Supp.3d 1137 (D. Ariz. 2014).

In *Stubbs-Danielson*, the court found that a RFC assessment limiting the claimant to "simple, routine, repetitive sedentary work, requiring no interaction with the public" adequately captured the claimant's concentration, persistence, or pace limitations where the RFC was consistent with restrictions identified in the medical testimony. In that case, Dr. McCollum opined that the claimant had good persistence but slow pace in thought and action, and could follow three-step instructions. *Stubbs-Danielson*, 539 F.3d at 1171. Dr. Eather opined she had several mental limitations and could perform simple work without public contact. *Id.* The court noted that McCollum's opinion noted pace deficiencies, but did not assess whether the claimant could perform unskilled work on a sustained basis. *Id.* at 1173. Eather also identified a slow pace but concluded the claimant could carry out simple tasks. *Id.* The court reasoned that "[t]he ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'" *Id.* at 1174. The court found this was consistent with Dr. McCollum's opinion that the claimant was "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." *Id.* The court thus concluded that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.*

The *Stubbs-Danielson* court found the Eight Circuit's decision in *Howard v. Massanri*, 255 F.3d 577, 582 (8th Cir. 2001) directly on point. As summarized by *Stubbs-Danielson*, in *Howard* the court rejected a claim that "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace, where the state

psychologist identified the claimant as having these deficiencies but also opined that the claimant could sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity. *Stubbs-Danielson*, 539 F.3d at 1174. The *Stubbs-Danielson* court also rejected and distinguished a case from the Third Circuit where the court found error when the ALJ's hypothetical failed to include specific deficiencies in pace where the medical testimony recommended a particularized accommodation (requiring close physical proximity between job site and claimant's children) but the ALJ only included a limitation for a reasonable number of phone calls. 539 F.3d at 1174–75.

In *Perkins*, the court held that the ALJ's RFC assessment failed to incorporate the treating physician findings that the claimant had moderate difficulties in concentration, persistence, or pace. There, the psychologist opined that the claimant was moderately limited in his ability to maintain concentration for extended periods, perform activities within a schedule, complete a normal workday/workweek without interruption from psychologically based symptoms, and perform at a consistent pace. *Perkins*, 45 F.Supp.3d at 1152. The ALJ gave this opinion great weight. *Id.* However, the ALJ's RFC assessment only limited the claimant to jobs requiring the ability to perform simple, unskilled work, and contained no specific concentration, persistence or pace limitations. *Id.* at 1153.

The *Perkins* court distinguished *Stubbs-Danielson* because in that case, "the record contained some evidence of the claimant's slow pace, but the only 'concrete' functional limitation assessed . . . was a medical source opinion that, despite that slow pace, the claimant could perform 'simple tasks.'" *Perkins*, 45 F.Supp.3d at 1153. The *Perkins* court instead found *Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed.Appx. 211 (9th Cir. 2009) more on point. In *Brink*, the court found that the medical evidence established, and the ALJ accepted, that the claimant had moderate difficulties with concentration, persistence, or pace. 343 Fed.Appx. at 212. However, the ALJ's hypothetical to the VE only referenced simple, repetitive work, and thus failed to incorporate the claimant's concentration, persistence, and pace limitations. In *Perkins*, the court found that, like *Brink*, the ALJ accepted the physician's opinion that the claimant had moderate limitations in

concentration, persistence, and pace, but that the RFC limiting the claimant to "simple, unskilled tasks" was incomplete because it did not adequately reflect the physician's opinion regarding the limitations. *Perkins*, 45 F.Supp.3d at 1154.

The Court finds that this case is more analogous to *Stubb-Danielson* than *Perkins*. Here, like in *Stubbs-Danielson*, the state agency physicians found moderate limitations in concentration, persistence, or pace, which the ALJ accepted. The physicians also specifically opined that Plaintiff could perform simple tasks, interact with peers and supervisors on a superficial basis, and was unable to interact with the general public. *See also Howard*, 255 F.3d at 582. These specific, concrete, functional limitations are the exact limitations that the ALJ adopted in the RFC assessment. The ALJ's opinion also states that the RFC assessment reflects the degree of limitation that the ALJ found in the paragraph B mental function analysis. (AR 15). The ALJ noted a variety of findings from Plaintiff's mental health appointments ranging from 2012–2015 and determined that the "limited treatment records and primary and emergency care observations support a finding that the claimant is limited to simple, routine work with superficial workplace contact and no contact with the general public. Further limitations are not supported by the overall evidence." (AR 18–19). Thus, the RFC assessment is consistent with the medical testimony and adequately captures Plaintiff's limitations.[5] This is not a case like *Perkins* or *Brink*, where the physicians found limitations in concentration, persistence, or pace but did not specifically opine as to whether the claimants could perform simple, unskilled/repetitive work, and the only limitation in the ALJ's RFC assessment was a restriction to simple unskilled/repetitive work, thus failing to adequately capture the physician findings. *See also Lara v. Colvin*, 2015 WL 1505817 (D. Ariz. Mar. 31, 2015) (ALJ limited claimant to simple, repetitive, unskilled tasks; this failed to incorporate specific restrictions in concentration, persistence, and pace where examining physician assessed greater restrictions than state agency physicians and opined that claimant would have moderate to

---

[5] In addition, as explained further below, examining physician Dr. Plevell assessed difficulty with processing speed and possibly with abstraction, but did not opine as to any specific functional limitations, nor does her opinion contrast with or suggest more restrictive limitations than those assessed by the state agency physicians.

severe difficulty sustaining an ordinary routine without special supervision, mild difficulty working with others and performing activities within a schedule, etc. and did not specifically opine that claimant could perform simple, unskilled, repetitive work). Further, as the Commissioner notes, the state agency physicians also found that Plaintiff had no significant limitations in his ability to remember locations and work-like procedures; understand, remember and carry out simple instructions; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; and maintain socially appropriate behavior. (AR 93–94). The RFC thus reflects the physician findings that Plaintiff does have moderate limitations in concentration, persistence, or pace but is not significantly limited in other areas and is still able to perform simple work tasks with no public contact.

In sum, the Court finds that the ALJ's RFC assessment contains all of the limitations that the ALJ found credible and supported by substantial evidence in the record and is consistent with the restrictions identified in the medical testimony.

## B. Duty to Develop Record

Plaintiff contends that the ALJ failed to fulfill his duty to fully develop the record as to Dr. Plevell's psychiatric opinion. Plaintiff states that if the ALJ had questions regarding Dr. Plevell's opinion, then the ALJ should have ordered additional psychiatric testing instead of discounting the opinion because Plaintiff's mental state is highly relevant to the disability determination in this case.

While it is the claimant's burden to prove that he is disabled, *Valentine*, 574 F.3d at 689, "the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). "The ALJ is not a mere umpire at such a proceeding . . . it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). An ALJ's duty to develop the record further is triggered when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2010).

Here, the opinion in question consists of two short pages briefly describing Plaintiff's mental status and history, testing results, and Dr. Plevell's conclusion. (AR 358–59). The opinion does not include an explanation of the test results or what tests were administered. Rather, in her conclusion, Dr. Plevell stated that "[t]esting suggested highly significant difficulty with processing speed and possibly with abstraction. Behaviorally, [Plaintiff] demonstrated rapid speech and significantly disorganized thought. It is unclear if these issues are due to a primary condition or secondary to his Bipolar Disorder." (AR 359).

The ALJ gave some weight to Dr. Plevell's opinion because it provided test results not found in the treatment records. (AR 19). This is a valid reason to assign less weight to the opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings"); 20 C.F.R. § 404.1527 ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The ALJ also noted that Dr. Plevell provided no opinion as to whether or not her findings suggested vocational limitations or the extent of limitations, if any. *Id.*

As the Commissioner notes, Dr. Plevell's opinion is not ambiguous, nor did the ALJ describe it as such. Rather, the ALJ simply pointed out what was evident from the face of the opinion—Dr. Plevell did not assess any specific limitations. The ALJ's decision does not indicate that the ALJ found the record to be ambiguous or insufficient to properly evaluate Plaintiff's mental impairments, nor does the Court find it to be inadequate.

Plaintiff's attempt to persuade the Court otherwise is unwarranted. *See Bayliss*, 427 F.3d at 1217 ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. The ALJ, with support in the record, found the evidence adequate to make a determination regarding Bayliss's disability. Accordingly, the ALJ did not have a duty to recontact the doctors." (citations omitted)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ's finding that a report of a physical capacity test was contradictory did not require him to recontact the evaluator to resolve the perceived conflict; evaluator was not a treating source and the ALJ did not make a finding that the report was inadequate to make a determination regarding the claimant's disability, but rather, disagreed with the report's finding that the claimant could be exaggerating symptoms and still produce a valid test result.); *contra Tonapetyan*, 242 F.3d at 1150 (ALJ failed to fulfill his duty to develop the record where consulting medical expert repeatedly expressed his concern that the record was insufficient to allow him to render an opinion on some of claimant's alleged severe impairments and expert explicitly recommended the ALJ obtain additional medical evidence from the claimant's treating psychologist; ALJ gave great weight to the consulting medical expert yet failed to follow through with the expert's recommendations).

Further, following the hearing, the ALJ held the record open to allow Plaintiff to submit additional evidence to support his claim for disability. (AR 10, 82); *see Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge [his] duty [to develop the record] in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."). It is the Plaintiff's burden to prove that he is disabled, and if Plaintiff wished to provide any additional information in support of his alleged limitations, he was afforded the opportunity to do so.

In sum, the Court finds that the record here was not ambiguous or inadequate such that the ALJ was required to further develop the record to further assess Dr. Plevell's opinion. As noted above, the ALJ's RFC assessment adequately accounted for Plaintiff's

mental limitations by including restrictions for simple, routine tasks and no interaction with the public. This is consistent both with the state agency physician findings and with Dr. Plevell's conclusion that Plaintiff has difficulties with processing speed and possibly with abstraction.

### C. Credibility Finding

Finally, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount his subjective symptom testimony regarding his bipolar disorder. Plaintiff challenges the ALJ's reliance on his alleged drug-seeking behavior, failure to seek treatment or comply with treatment recommendations, GAF scores, activities of daily living, and drug use. Plaintiff further alleges that the ALJ's credibility analysis fails to comply with SSR 16-3p.[6] Conversely, the Commissioner argues that the ALJ's credibility finding is supported by the treatment record showing stable and unremarkable exams, non-compliance with treatment recommendations, lack of pain medications despite complaining of debilitating pain, and activities of daily living inconsistent with claims of disabling physical and mental limitations.

"An ALJ's assessment of symptom severity and claimant credibility is entitled to great weight." *Honaker v. Colvin*, 2015 WL 262972, *3 (C.D. Cal. Jan. 21, 2015) (internal quotations and citations omitted). This is because "an ALJ cannot be required to believe

---

[6] SSR 16-3p went into effect on March 16, 2016 and supersedes SSR 96-7p, the previous policy governing the evaluation of symptoms. SSR 16-3p, 2016 WL 1119029, *1. The ruling indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." *Id.* Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." *Id.* This ruling is consistent with the previous policy and clarifies rather than changes existing law. Under either ruling, the ALJ is required to consider the claimant's report of her symptoms against the record—in SSR 96-7p, this resulted in a "credibility" analysis; in SSR 16-3, this allows the adjudicator to evaluate "consistency." *Compare* SSR 16-3p *with* SSR 96-7p (both rely on two step process followed by an evaluation of claimant's testimony and contain the same factors for consideration).

"The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). "Accordingly, the ALJ's use of the word 'credibility' is not, in and of itself, error . . . because the new ruling does not alter the pre-existing standards in the Ninth Circuit for evaluating a claimant's symptom testimony." *Petersen v. Berryhill*, 737 F. App'x 329, 332 n.1 (9th Cir. 2018).

every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Treicherler v. Comm'r. Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). "If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court may not engage in second-guessing." *Honaker*, 2015 WL 262972 at * 3 (internal quotations and citation omitted).

While questions of credibility are functions solely for the ALJ, this Court "cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Comm'r Soc. Sec. Admin.* 466 F.3d 880, 885 (9th Cir. 2006). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). "Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Further, "[t]he ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

While it is permissible for an ALJ to look to the objective medical evidence as one factor in determining credibility, the ALJ's adverse credibility finding must be supported by other permissible evidence in the record. *Bunnell*, 947 F.2d at 346–47 ("adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence"). However, "an ALJ may reject a claimant's statements about the severity of his symptoms and how they affect him if those statements are *inconsistent with or contradicted by* the

objective medical evidence." *Robbins*, 466 F.3d at 887. "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotations and citations omitted).

The ALJ did not make a finding that Plaintiff was malingering; therefore, to support his discounting of Plaintiff's assertions regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons. In his decision, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. (AR 16, 21). Plaintiff specifically challenges the ALJ's discounting of his testimony regarding his bipolar disorder; however, there is limited testimony from Plaintiff regarding his mental health problems. For example, on his Function Report, Plaintiff did not note any mental-health related impairments. (AR 236). For how long he can pay attention, he wrote "I so broke I can't afford to pay;" for how well he can follow written instructions, Plaintiff stated he had problems writing because of his elbow pain; and for how well he can follow spoken instructions, Plaintiff wrote "what does that have to do with my hip." (AR 236). At the hearing before the ALJ, Plaintiff testified to having problems processing new information and staying focused. (AR 62). He admitted that he had called his counsel's office multiple times in a row upset and yelling because he gets agitated about things (AR 63); he does not like being around a lot of people and had never gotten in a fight with anyone, but there were allegations. (AR 64).

Plaintiff's argument on this issue is somewhat unclear, as Plaintiff does not point to any specific allegation that the ALJ rejected or any specific limitation that the ALJ failed to include in the RFC. And, the ALJ was sensitive to Plaintiff's complaints and did find that Plaintiff's bipolar disorder was a severe impairment. The ALJ's decision contains a thorough discussion of Plaintiff's mental health treatment. (AR 18–21). After summarizing

these records, the ALJ concluded that the "limited treatment records and primary and emergency care observations support a finding that the claimant is limited to simple, routine work with superficial workplace contact and not contact with the general public." (AR 19). In evaluating Plaintiff's subjective symptom testimony, the ALJ noted that Plaintiff reported problems processing new information and staying focused, becomes anxious, and has difficulty getting along with people but has never been in a fight. (AR 16). The ALJ took Plaintiff's limitations into account by formulating a RFC with a restriction to simple, routine tasks and no interaction with the general public.

The ALJ noted the record contains instances of pressured speech and tangential thought processes, but at other appointments Plaintiff was oriented with appropriate mood and affect and normal insight and judgment. (AR 18–19). The Court's review of the record shows that at times Plaintiff's symptoms improved and at times they worsened, but there is no medical testimony opining to more restrictive mental health limitations than those assessed by the ALJ, nor did Plaintiff himself testify to limitations that would support a more restrictive RFC. Thus, this is not a case like *Caceres v. Colvin*, 2015 WL 4040727, at *3 (W.D. Wash. July 1, 2015), where the claimant's providers found that she "experienced severe limitations specifically and exclusively as a result of her bipolar disorder." While the Court recognizes that "'a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition,'" *Caceres*, 2015 WL 4040727, at *6 (quoting *Punzio v. Astrue*, 630 F.3d 704, 710 (9th Cir. 2011)), in this case the record taken as a whole does not support a finding of more restrictive limitations than those assessed by the ALJ. Plaintiff himself has focused on his physical complaints, and even Plaintiff's mother, whom he lives with, failed to mention any mental health conditions in her third-party function report.

The ALJ also noted that there was limited evidence of specialist treatment and some evidence of non-compliance with medication. (AR 18). "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or

exaggerated." *Orn*, 495 F.3d at 638; *see also Everson v. Astrue*, 2012 WL 5994972, *7 (W.D. Wash. Oct. 22, 2012) ("Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." (internal quotations and citation omitted)). While Social Security regulations require claimants to follow "treatment prescribed by your medical source(s)" to receive benefits, the same regulations make clear that if the claimant has a "good reason" and "justifiable cause" for not following the prescribed treatment, rejection of treatment will not be held against the claimant. 20 C.F.R. § 416.930; SSR 82-59; SSR 16-3p. Here, Plaintiff notes that the ALJ discussed his reasons for stopping his medication due to side effects, but then alleges that the ALJ apparently rejected this explanation. (Doc. 16 at 15). The ALJ makes no such statement in his decision and the Court will not imply one here. Plaintiff also alleges that the ALJ erred by failing to ask him why he stopped treatment at COPE or did not pursue other mental health treatment. (Doc. 16 at 15). As Plaintiff notes and the record reflects, Plaintiff has been more focused on his physical impairments than his mental impairments, and there is little opinion testimony in the record recommending limitations specific to Plaintiff's bipolar disorder. It is the claimant's burden to prove disability, and it was incumbent on Plaintiff and his counsel to obtain and present evidence in support of Plaintiff's claims. The fact that the ALJ noted there was "limited evidence of specialist treatment" does not correlate to an affirmative duty for the ALJ to inquire why Plaintiff did not pursue other mental health treatment; rather, this is a valid reason suggesting that Plaintiff's mental health complaints may not be as severe as alleged.

The ALJ noted that Plaintiff's GAF scores indicated moderate symptoms. (AR 20–21). However, the ALJ also stated that GAF scores do not correlate to the regulatory definition of disability and cannot be used directly to assess disability, but were considered as part of the evidence of Plaintiff's functioning and addressed in the RFC limiting Plaintiff to simple work. *Id.* Plaintiff suggests that because the ALJ noted Plaintiff's GAF scores were in the moderate range, this implies that the ALJ used the GAF scores as a reason to

discount Plaintiff's subjective symptom testimony. (Doc. 16 at 16). The ALJ makes no such conclusion in his decision and the Court will not assume one here.

Plaintiff contends that the ALJ also discounted his testimony because of his alleged drug-seeking behavior. Plaintiff's argument on this point is confusing—he contends that the ER note stating that he had a mental health issue and was exhibiting drug-seeking behavior could be a valid reason to discount his statements regarding his physical impairments (if a patient is exaggerating pain to obtain pain medications, that could indicate that the claimant's statements about the limiting effects of his pain are not as severe as alleged), but that the note indicates nothing about his mental health issues and thus the ALJ cannot use this incident to discount his testimony regarding his bipolar disorder. (Doc. 16 at 14). But Plaintiff then also says that his presentation in the ER was probably due to a symptom of his mania. In any event, the ALJ gave great weight to the ER physician's report and discussed the report in terms of Plaintiff's alleged back pain, noting that Plaintiff exhibited no signs of back discomfort and moved without difficulty after being told he would not be given morphine. (AR 18–20). The ALJ did not specifically find that this instance of drug-seeking behavior supported or undermined Plaintiff's mental health allegations, and the Court will not read into the record something that the ALJ did not actually say. However, to the extent that the ALJ relied on this incident to find that Plaintiff's statements were not entirely consistent with the objective record, the ALJ did not err because Plaintiff's presentation in the ER undermines his allegations of disabling back pain.

Plaintiff contends that the fact that he helps his mother with chores when he can is not inconsistent with a disabling impairment, especially given the cyclical nature of bipolar disorder. (Doc. 16 at 17). However, in his decision, the ALJ did not comment on Plaintiff's chores specifically in relation to Plaintiff's mental limitations. Rather, the ALJ summarized Plaintiff's mother's testimony regarding his physical impairments and noted that Plaintiff received money from his mother in exchange for doing chores. (AR 21). The ALJ found this was inconsistent with disabling limitations. *Id.* Given Plaintiff's allegations that he is

unable to work due to pain in his back and elbow, the ALJ could properly consider that Plaintiff's daily activity of doing chores for money was inconsistent with his allegations of physically disabling pain.[7] *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" (quoting *Reddick v. Chater*, 157 F.3d at 722 (citations omitted))); *Molina*, 674 F.3d at 1112–13 (ADL "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a totally debilitating impairment").

In sum, the Court finds that the ALJ provided clear and convincing, specific reasons to find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective medical evidence or other evidence in the record. Further, even if the ALJ did err in relying on any of the above reasons to find that Plaintiff's subjective testimony was not entirely consistent with the objective record, any error was harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (so long as there remains "substantial evidence supporting the ALJ's decision" and the error "does not negate the validity of the ALJ's ultimate conclusion," such error is deemed harmless and does not warrant reversal); *see also Stout*, 454 F.3d at 1055 (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").

**V.   Remedy**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690. Here, the record contains sufficient substantial evidence to meet this standard.

---

[7] As the Commissioner notes, the issue is not whether Plaintiff's ability to do chores establishes his ability to function in a work environment; the issue is whether Plaintiff's daily activities are inconsistent with the limitations he endorsed.

The Court concludes that the ALJ's findings are supported by substantial evidence and there is no legal basis for reversing or remanding his decision. Therefore, Plaintiff is not entitled to relief.

**VI.     Conclusion**

In light of the foregoing, **IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and close its file on this matter.

Dated this 11th day of December, 2018.


Eric J. Markovich
United States Magistrate Judge